**UNITED STATES of America, Appellee,**

v.

**Warren Ricardo COPELIN, Appellant.**

**No. 91–3326.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 1, 1993.

Decided June 25, 1993.

Robert L. Tucker, Asst. Federal Public Defender, argued the cause for appellant. With him on the brief was A.J. Kramer, Federal Public Defender.

M. Evan Corcoran, Asst. U.S. Atty., of the bar of the Supreme Court of Virginia, pro hac vice, by special leave of the Court, argued the cause for appellee. With him on the brief were Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher, Roy M. McLeese, III, and Linda L. Mullen, Asst. U.S. Attys.

Before MIKVA, Chief Judge; WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Warren Ricardo Copelin appeals his conviction on one count of unlawful distribution of cocaine. He argues that the district court erred by permitting the government to cross-examine him concerning his three positive drug tests for cocaine while on pre-trial release. He further asserts that even if the district court did not err by admitting this evidence, it committed reversible error by doing so without issuing an immediate limiting instruction to the jury. Finally, Mr.

Copelin contends that the district court's calculation of his sentence was improper because, in determining his base offense level, the judge considered a quantity of cocaine contained in a discarded bottle, even though Mr. Copelin was acquitted of the charge that he possessed the drugs in that bottle.

We find that the district court's decision to admit the evidence regarding the positive drug tests was proper, but that its failure to issue an immediate cautionary instruction informing the jury as to the permissible uses of that evidence constituted plain error. We therefore reverse the conviction and remand for a new trial. It thus is not necessary for us to reach the sentencing issue.

## I. BACKGROUND

Vanessa Moore, an undercover District of Columbia police officer, pre-recorded the serial numbers of three bills and used them to purchase two rocks of crack cocaine, totalling .144 gram, from a man she maintains was Mr. Copelin. The man who sold her the crack produced the drugs from a brown medicine bottle. After making the purchase, Officer Moore broadcast a radio lookout and description of the suspect, and, within a few minutes, an arrest team stopped Mr. Copelin. Shortly thereafter, Officer Moore identified Mr. Copelin as the man who sold her drugs. When the arrest team officers searched Mr. Copelin, they found that he possessed the pre-recorded currency. At the scene of the arrest, one of the officers found a brown medicine bottle containing 5.634 grams of cocaine base lying on the ground.

Mr. Copelin was charged with the unlawful distribution of crack cocaine, in connection with the two rocks he allegedly sold the officer, and with possession with intent to distribute in excess of five grams of crack cocaine, in connection with the drugs contained in the bottle. At trial, Mr. Copelin contended that he had not made the sale. He argued that Officer Moore was mistaking him for a man named David Bailey, with whom he was playing dice around the time of the sale. Mr. Copelin and his corroborating witnesses testified that they had seen Mr. Bailey repeatedly leave the dice game to engage in transactions. They further testified that money was rapidly changing hands during the game.

The jury found Mr. Copelin guilty of unlawful distribution, but not guilty of possession with intent to distribute the drugs in the brown medicine bottle. In calculating his sentence, however, the district court found by a preponderance of the evidence that he had possessed the 5.634 grams of cocaine in the bottle. The judge held that the "same course of conduct" provision in the Sentencing Guidelines, U.S.S.G. § 1B1.3(a)(2), compelled him, in determining Mr. Copelin's sentence, to consider the quantity of crack in the bottle as well as in the two rocks purchased by Officer Moore. He sentenced Mr. Copelin to sixty-three months incarceration, to be followed by three years of supervised release.

## II. ANALYSIS

Mr. Copelin's evidentiary claims concern a colloquy that occurred during the government's cross-examination of him at trial. The prosecutor asked him whether he knew that Mr. Bailey, the man Mr. Copelin contends actually made the sale, was in fact engaging in drug transactions during the dice game.

Q: All right. And did you ever see him engage in a transaction where you knew it for sure?

A: I would see money change hands, but other than seeing the actual drugs or anything, no, I haven't noticed.

Q: You didn't see any actual drugs?

A: No, sir.

Q: Would you know what they looked like if you saw them?

A: Yes. It's advertised on TV, too, sometimes in the commercials.

Q: You see drugs advertised on TV?

A: Yes, you know, on news or something like that.

Q: And that's the only time you've ever seen drugs?

A: Roughly, yes.

Q: Roughly?

A: Yes.

The prosecutor then requested a bench conference, during which he sought permission from the court to cross-examine Mr. Copelin as to his positive drug tests while he was on pretrial release.

The defendant tested positive for cocaine on three separate occasions and I believe that provides a reasonable basis to assume that he has seen cocaine.... He's made a bald denial that he has ever seen cocaine aside from on TV right here on the stand. I believe that's false and as a result, I propose to cross-examine him on this, but I wanted to ask the Court about it in advance.

Over the objection of defense counsel, the trial judge, without explanation, permitted the prosecutor to proceed with this line of questioning.

Q: Now, Mr. Copelin, isn't it true that as a condition of your release pending trial in this case, you were required to report to the Pretrial Services Administration for drug testing?

A: Yes.

Q: And isn't it true that you tested positive for cocaine on June 13th, 1991?

A: Yes.

Q: And you tested positive for cocaine on June 14th, 1991.

A: Yes.

Q: And you tested positive for cocaine on June 21st, 1991?

A: I don't recall that one.

Q: You don't recall that one?

A: No, sir.

Q: But despite having tested positive for cocaine on at least two occasions, you're telling the ladies and gentlemen of the jury that you have never seen cocaine except on television?

A: It could be anywhere. I never seen it, never used it.

The government then went on to pursue other issues. Defense counsel did not request a limiting instruction, and the trial judge did not offer one *sua sponte*, either immediately after this dialogue or as part of his final charge to the jury.

 Mr. Copelin argues that the district court should not have allowed the government to question him as to the positive drug tests. As an initial matter, however, he concedes, as he must, that although "prior bad acts" evidence is not admissible to show a defendant's propensity to commit the crime at issue, there are circumstances under which a court may admit such evidence. Rule 404(b) of the Federal Rules of Evidence states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Although it is not one of the listed permissible purposes, an attempt to impeach through contradiction a defendant acting as a witness is indisputably a legitimate reason to introduce evidence of other crimes or wrongs. *United States v. Bell*, 506 F.2d 207, 213 (D.C.Cir.1974). If "bad acts" evidence is offered for this reason, it is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED.R.EVID. 403.

 Mr. Copelin levels several attacks against the district court's admission of the evidence concerning his positive drug tests. First, he contends that the government's line of inquiry violated the threshold requirement that impeachment evidence actually contradict the witness' testimony. This argument is unavailing, however, because Mr. Copelin's admission as to the positive drug tests clearly tended to contradict his earlier assertion that he had only seen drugs on television. Mr. Copelin responded to the government's initial queries by denying that he had ever had any direct acquaintance with narcotics. It was consequently proper for the district court to permit the government to impeach Mr. Copelin by attempting to demonstrate that this statement was false.

■ Mr. Copelin also claims that the government's method of impeachment violated the ban on the use of extrinsic evidence to impeach by contradiction on collateral matters. It is true that this Circuit generally follows the rule that "a witness may not be impeached by extrinsic evidence (contradiction by another witness or evidence) on a collateral issue." *United States v. Tarantino,* 846 F.2d 1384, 1409 (D.C.Cir.1988), *cert. denied,* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988). *But cf. Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (permitting government to use unlawfully obtained extrinsic evidence to impeach false statement offered by defendant on cross-examination that he had never dealt in or possessed narcotics); *United States v. Bell,* 506 F.2d 207 (D.C.Cir.1974) (entitling prosecutor to impeach defendant with extrinsic evidence that he had engaged in another drug transaction after the accused volunteered a declaration of unfamiliarity with narcotics on cross-examination). However, the rule disallowing the use of extrinsic evidence to impeach a witness as to a collateral matter is irrelevant to this case, because Mr. Copelin was impeached by his own statements on cross-examination, not by the testimony of another witness or by physical evidence. "[C]ases upholding a court's exclusion of *extrinsic* evidence offered to impeach a witness, on the ground of the issue's being 'collateral,' do not govern the scope of cross examination itself." *United States v. Stock,* 948 F.2d 1299, 1302 (D.C.Cir.1991).

Mr. Copelin further argues that the government should not have been allowed to place inadmissible evidence before the jury by trapping him into opening the door by contradiction. He seems to suggest that the government's line of questioning was merely a ploy to smuggle in the evidence regarding the positive drug tests. But the courts have always recognized an important distinction between effective cross-examination and unfair tactics. When Mr. Copelin testified that he did not actually see David Bailey selling drugs, it was not entirely unnatural for the government to explore the basis for this response by inquiring whether Mr. Copelin had the ability to recognize drugs in the first place. As the Supreme Court has held in a

related context, "If these questions would have been suggested to a reasonably competent cross-examiner ... they were not 'smuggled in'; and forbidding the Government to impeach the answers to these questions by using contrary and reliable evidence in its possession fails to take account of our cases." *United States v. Havens,* 446 U.S. 620, 626, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980).

■ It may well be that the trial judge would have sustained timely objections by defense counsel to the prosecutor's questions concerning Mr. Copelin's ability to recognize drugs. Mr. Copelin's attorney did not issue any such objections, however, so in reviewing this aspect of the cross-examination, we are limited to correcting "plain errors." FED. R.CRIM.P. 52(b). The plain error exception to the contemporaneous objection requirement should be used sparingly, only for "particularly egregious errors," *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). The district court's failure to squelch the government's disputed line of questioning on its own initiative was certainly not plain error, if it was error at all.

Overall, Mr. Copelin's claim that the district court erred by allowing the government to cross-examine him as to his positive drugs tests must fail in the face of *United States v. Bell,* 506 F.2d 207 (D.C.Cir.1974), in which this Court upheld the admission of "bad acts" evidence under almost precisely identical circumstances. In *Bell,* the defendant in a narcotics trial was asked by the prosecutor during cross-examination whether he had seen his companions selling drugs on the day he was arrested. The defendant responded that he had never seen drugs except on television. The trial judge then permitted the government to call a rebuttal witness to recount a drug purchase he allegedly made from Bell a few days prior to his arrest. This Court held that it was proper for the district court to admit such evidence.

In the instant case, Bell represented himself not only as an industrious businessman on Pier 1 merely to buy fish and chat with friends, but also as one who had never seen narcotics except on television, and consequently one who did not traffic in them. Evidence tending to show that Bell had previously transacted a sale of narcotics obviously bore a high degree of relevance to his credibility in disclaiming any acquaintance with narcotics.

506 F.2d at 214–15. We see no distinction between the present case and *Bell* that would warrant a different result as to the admissibility of impeachment evidence.

There is one critical difference between the cases, however. In *Bell*, the appellant failed to raise on appeal the trial court's failure to issue an immediate cautionary instruction when it admitted the disputed evidence. The panel consequently refused to consider the matter. 506 F.2d at 215 n. 42. In the present appeal, on the other hand, Mr. Copelin clearly contends that it was reversible error for the district court to fail to give a limiting instruction concerning the permissible use of the impeachment evidence. Although Mr. Copelin did not request a limiting instruction at trial, he asserts that it was plain error for the District Court to neglect to issue one *sua sponte*.

This Court has long expressed its conviction as to the necessity of a cautionary instruction when evidence is admitted for a limited purpose. *See United States v. Lewis*, 693 F.2d 189, 196–97 (D.C.Cir.1982) (survey of this Court's treatment of the issue). In the late 1960's and early 1970's, this Court repeatedly suggested that it was invariably plain error for the trial court to fail to give a limiting instruction. In *United States v. McClain*, Judge Bazelon wrote:

We would hold that whenever evidence is admitted only for a limited purpose, it is plain error, in the absence of manifest waiver, to omit an immediate cautioning instruction. The danger of prejudicial effect from such evidence is so great that only an immediate and contemporaneous instruction can be considered sufficient to protect defendants.

440 F.2d 241, 246 (D.C.Cir.1971). *See also Jones v. United States*, 385 F.2d 296, 300 (D.C.Cir.1967); *United States v. Bussey*, 432 F.2d 1330, 1334–35 (D.C.Cir.1970).

As the years passed, however, this Court chipped away at the broad implications of this doctrine. In case after case, we held that the failure to give an unrequested limiting instruction did not constitute reversible error. Although the departures from the strict *McClain* approach were justified for various reasons, Judge Wright, in *United States v. Lewis*, discerned a general theme:

When all the dust is settled and pushed aside, it becomes clear that *McClain* and its progeny find that reversible error occurs only when evidence *that substantially prejudices the defendant* is admitted without immediate cautioning instruction as to its permissible uses.

693 F.2d at 197 (emphasis added).

This Court therefore no longer deems the omission of a limiting instruction to constitute plain error in every case. Rather, the lack of a cautionary instruction is plain error only when the disputed evidence "substantially prejudices" the defendant. Nonetheless, this Court has repeatedly suggested that, in the absence of a limiting instruction, the defendant is invariably "substantially prejudiced" when evidence that could also have substantive significance is admitted solely for impeachment purposes. Indeed, we have verged on suggesting that it is *per se* plain error for a trial judge to fail to issue an immediate limiting instruction in such a circumstance. For example, in *United States v. Bobbitt*, 450 F.2d 685 (D.C.Cir. 1971), this Court held that the trial judge in the case at issue did not commit plain error by omitting a cautionary instruction, but we then went on to observe:

There are instances where the failure to limit the jury's use of other crimes is error and may even be plain error. The most obvious occurs where the other crime is introduced, not as substantive evidence, but solely as impeachment. In that situation, the evidence by definition has no direct bearing on any substantive issue at trial, but solely on the credibility of a witness on the stand. Therefore the trial

court has a duty to see that the jury does not cross the boundary between credibility and substance in making its inferences from the prior act. He must not only act sua sponte, whether or not a request is made, but should give an appropriate instruction immediately before or after the impeachment evidence is submitted.

*Id.* at 691.

Similarly, in *United States v. Leonard,* this Court wrote, "In this circuit, it has been firmly established that when evidence is admitted for the limited purpose of impeaching a witness, it is plain error, in the absence of a manifest waiver, for the district court to omit an immediate instruction." 494 F.2d 955, 964–65 (D.C.Cir.1974). In *Lewis* itself, this Court, while rejecting the blanket prophylactic rule requiring a cautionary instruction whenever evidence is admitted for a limited purpose, nonetheless noted, "[W]hen a party seeks to impeach a witness by prior inconsistent statements it is plain error not to give an immediate limiting instruction if the jury could give substantive effect to the impeachment evidence." 693 F.2d at 197 n. 34.

We do not hold that it is *per se* plain error for a district judge to neglect to offer an immediate limiting instruction whenever evidence is admitted only for purposes of impeachment. The Supreme Court, noting the "pointlessness" of reviewing "harmless plain errors," has held that a *"per se* approach to plain-error review is flawed." *United States v. Young,* 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985). The plain-error doctrine requires an appellate court at least to find that the claimed error affected substantial rights and had unfair prejudicial impact on the jury's deliberations. *Id.*

 Nonetheless, this Circuit's cases indicate that there is a huge presumption of plain error when a trial judge omits a cautionary instruction when admitting impeachment evidence to which a jury could give substantial effect against a criminal defendant. The government fails to persuade us that this case was one of the rare situations of this type in which a limiting instruction was not necessary. The information regarding Mr. Copelin's positive drug tests was "bad acts" evidence of the most prejudicial

sort. Not only did the revelation that he used cocaine on other occasions subject him to the opprobrium that members of the jury may have felt toward drug users, but it also tended to bolster the government's contention that he was the man who sold the same drug to Officer Moore on the day in question. There are few circumstances in which a cautionary instruction would be more appropriate.

The government attempts to dismiss the necessity of a limiting instruction in this case by asserting that the positive drug tests were admitted not only for impeachment purposes, but also to establish that Mr. Copelin was knowledgeable about crack cocaine. The government relies on *United States v. Thomas,* 459 F.2d 1172 (D.C.Cir.1972), for the principle that it is not reversible error for a trial court to fail to give special cautionary instructions when evidence is introduced for "multiple rather than limited purposes." *Id.* at 1175.

The government's use of *Thomas* is clearly inapposite, for that case addressed the difficulty of framing a meaningful limiting instruction when evidence is admitted for many "diffused" purposes. *Id.* Even by the government's own reckoning, the district court in the present case admitted the disputed evidence for at most two distinct purposes: impeachment and proof of knowledge. And in fact, despite the government's contention, impeachment was the court's sole rationale for admitting the evidence. During the bench conference regarding the admissibility of the drug test evidence, the prosecutor argued only that the evidence should be admitted to impeach Mr. Copelin's testimony. The prosecutor stated, "He's made a bald denial that he has ever seen cocaine aside from on TV right here on the stand. I believe that's false and as a result, I propose to cross examine him on this...." The judge overruled the defense counsel's objection to the evidence without comment, implicitly validating the impeachment justification proffered by the government.

Neither the prosecutor nor the district judge ever suggested that the evidence should be admitted to establish Mr. Copelin's

knowledge about cocaine. Indeed, this rationale for admitting the drug tests would have made no sense in the context of the trial, because Mr. Copelin's defense was not based on a purported ignorance about drugs. He did not contend that his lack of his familiarity with cocaine rendered him unable knowingly to sell or possess the drug. Rather, Mr. Copelin simply asserted that he was not the person who sold the crack to Officer Moore and that he never possessed the brown medicine bottle.

## III. CONCLUSION

The district court permitted the government to cross-examine Mr. Copelin as to his positive drug tests only for impeachment purposes. If the jury considered the evidence for other, impermissible purposes, it was likely to be substantially prejudiced against Mr. Copelin. It therefore was imperative for the trial judge to issue an immediate cautionary instruction informing the jury as to the limited allowable uses of the drug test evidence. His failure to do so constituted reversible plain error. Whatever the efficacy of limiting instructions, the courts have used them to temper the potential prejudice caused by marginal evidence admitted for purposes other than establishing the charged crime.

We therefore overturn Mr. Copelin's conviction and remand to the district court for a new trial. Because we reverse the conviction, it is not necessary for us to consider the sentencing issue.

*Reversed and Remanded.*