**UNITED STATES of America,**

v.

**Tyrone E. BRAWNER, Appellant.**

No. 91–3332.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 15, 1994.

Decided Aug. 26, 1994.

Enid Hinkes (appointed by the court) argued the cause and filed the briefs for appellant.

Cynthia D. Walicki–Chan, Asst. U.S. Atty., argued the cause for appellee. With her on the brief were J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher, Asst. U.S. Atty.

Before SILBERMAN, WILLIAMS, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Tyrone Brawner challenges his conviction on a single count of possession with intent to distribute cocaine. Based upon *United States v. Copelin,* 996 F.2d 379 (D.C.Cir. 1993), he argues that it was plain error for the district judge not to have issued a limiting instruction sua sponte after his prior convictions for robbery and possession with intent to distribute heroin were introduced into evidence. We hold that the presumption of plain error created in *Copelin* does not arise where, as in this case, evidence of the defendant's prior bad acts is introduced not by the Government but as part of the defense attorney's strategy.* We therefore affirm Brawner's conviction.

## I. BACKGROUND

In January 1991 officers of the Metropolitan Police Department executed a search warrant at a house in the southwest quadrant of the city. At the time, three people were in the house: appellant Brawner, who was sitting in a bedroom, naked; Carolyn Willis, who was standing in the bathroom, also naked; and a young child who was sleeping on a sofa elsewhere in the house. Brawner's blue jeans, with $300 in the pocket, were on a chair in the bedroom. When the officers moved the jeans they found, partially hidden under the cushion of the chair, a black pouch containing 30 ziplock packets of cocaine. The police then advised Brawner and Willis of their rights and asked them whether they lived in the house. Willis said she did not; according to the trial testimony of one detective, Brawner said that he did live in the

house. The police also found Brawner's identification card and other personal items in the bedroom in which he was sitting when arrested.

At trial Brawner testified in his own behalf and presented five other witnesses. Brawner's testimony focused on establishing that he did not live in the house in which he was arrested, that the black pouch was not his, and that he did not have control over it. On direct examination, Brawner denied telling police officers that he lived in the house and denied that he had brought the pouch of drugs to the house. He testified that he had gone to the house, as he did "three or four times a week," to be injected with a combination of heroin and cocaine. He said that he was admitted to the house by one Gary Stanley, a friend of his, who injected him with drugs and departed, and that he met Carolyn Willis that day at the house. Brawner also testified about the search, about what he was asked during the search, and about where his items of clothing and the black pouch containing the drugs were located.

Prior to putting Brawner on the stand, his attorney had learned that the Government intended to impeach Brawner with his convictions in 1976 for robbery and in 1980 for possession with the intent to distribute heroin. Having tried but failed to convince the district judge to exclude questions about his prior convictions because of their potential for prejudice, she apparently decided that Brawner should bring the facts out himself, *i.e.,* under her direct examination, rather than wait for the prosecutor to ask him about his prior convictions. Therefore, after asking Brawner a series of questions about whether he either owned or had ever seen the black pouch in which the drugs were found, Brawner's attorney questioned him as follows:

Attorney: All right. Now, Mr. Brawner, you were convicted of robbery in 1976, isn't that correct?

Brawner: Yes.

*See Irons v. Diamond,* 670 F.2d 265, 268 n. 11 (D.C.Cir.1981).

---

* Our holding limiting the scope of *Copelin* has been circulated to and approved by the entire court and thus constitutes the law of the circuit.

Attorney: And you were convicted of possession with intent to distribute heroin, isn't that correct?

Brawner: Yes.

Attorney: What year was that?

Brawner: '79, '80.

Attorney: Do you recall if you went to trial or you plead in that case?

Brawner: I pleaded guilty to both.

Attorney: Why is that?

Brawner: Because I was guilty.

Without further comment Brawner's attorney then turned to questioning him about whether he lived in the house in which he was arrested and what he knew about who lived there.

On cross-examination, the prosecutor's first three questions asked Brawner to confirm the details of his conviction for possession with the intent to distribute heroin. The prosecutor then questioned Brawner briefly about what had occurred on the day of his arrest. At no point did Brawner's attorney ask for a limiting instruction; nor did the district judge offer one sua sponte.

The trial judge did give a limiting instruction with respect to the prior acts evidence as part of his final charge to the jury. The judge's final instructions were not transcribed, but the parties agree that he told the jury that it was to consider Brawner's past convictions only for their bearing, if any, upon his credibility as a witness, and not with respect to any of the substantive questions at issue in the case. The jury convicted and the district judge sentenced Brawner to 27 years of imprisonment, to be followed by four years of supervised release.

## II. ANALYSIS

Brawner's only substantial challenge to his conviction is based upon the trial court's failure to issue a limiting instruction sua sponte after Brawner testified concerning his two prior convictions. As a general matter, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." FED.R.EVID. 404(b). In other words, a jury may not infer (and evidence may not be introduced in order to encourage them to infer) that because a defendant has committed a crime in the past he is a bad person and therefore likely to have committed the crime for which he is on trial. *Cf. Michelson v. United States,* 335 U.S. 469, 475–76, 69 S.Ct. 213, 218–19, 93 L.Ed. 168 (1948) (noting that "[t]he inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge").

Nonetheless, Rule 404(b) permits evidence of prior bad acts to be introduced for other purposes. For example, such evidence may be used in "an attempt to impeach the accused as a witness." *United States v. Bell,* 506 F.2d 207, 213 (D.C.Cir.1974). As Justice Holmes said some time ago in a civil case:

[W]hen it is proved that a witness has been convicted of a crime, the only ground for disbelieving him which such proof affords is the general readiness to do evil which the conviction may be supposed to show. It is from that general disposition alone that the jury is asked to infer a readiness to lie in the particular case, and thence that he has lied in fact.

*Gertz v. Fitchburg Railroad Co.,* 137 Mass. 77, 78 (1884). The same rationale applies as well in a criminal case. *See, e.g., Brown v. United States,* 370 F.2d 242, 244 (D.C.Cir. 1966) ("The reason for exposing the defendant's prior record is to attack his *character,* to call into question his reliability for truth-telling by showing his prior, relevant antisocial conduct") (emphasis in original).

■ The use of prior acts evidence therefore depends upon a distinction that although subtle has nonetheless long been recognized in our law: the jury may infer from such evidence that the defendant has a "bad character" and is therefore not a credible witness, but not that the defendant has a "bad character" and therefore committed the crime with which he is charged. In order to bring this distinction home to the jury, a defendant who is impeached by evidence of a past conviction is entitled to a limiting instruction—that is, an instruction to the jury that it may use the

evidence of his prior conviction only to assess his credibility, and not to infer that he is guilty of the crime for which he is on trial. *See* FED.R.EVID. 105.

As we have seen, Brawner's attorney did not ask for a limiting instruction either when she first brought out his prior convictions on direct examination or when the prosecution returned to the subject on cross-examination; nor did she later object to the district judge's failure to offer one. Nonetheless, Brawner now argues that the failure of the district judge to offer such an instruction sua sponte requires reversal of his conviction.

We begin our analysis of Brawner's argument with the general principle stated in Federal Rule of Evidence 105:

> When evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, *upon request,* shall restrict the evidence to its proper scope and instruct the jury accordingly.

(Emphasis added). Rule 105 clearly places upon defense counsel the burden of requesting an instruction limiting the use to which the jury may put evidence of the defendant's prior crime. As the Supreme Court has noted, defense counsel's right to request such an instruction is a primary source—along with the requirements that the evidence be relevant, offered for a proper purpose, and probative—from which "the protection against ... unfair prejudice emanates." *Huddleston v. United States,* 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988).

■ We have nonetheless held that the failure of a district judge to offer a limiting instruction to the defendant sua sponte may constitute reversible error. Most notably, in *United States v. Lewis,* 693 F.2d 189, 197 (D.C.Cir.1982) (footnotes omitted), we held that: "The court must give such an instruction *sua sponte* only if the evidence has the potential for substantially prejudicing the defendant." Hence, the appropriate focus of our inquiry is whether the admission of testimony concerning Brawner's prior convictions substantially prejudiced him—a form of plain error analysis. *See United States v. Olano,* — U.S. —, —————, 113 S.Ct. 1770,

1777–78, 123 L.Ed.2d 508 (1993) (holding that defendant who fails timely to object during trial, "bears the burden of persuasion with respect to prejudice"); *see also United States v. Young,* 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985) (holding that a *"per se* approach to plain-error review is flawed").

■ We most recently discussed the framework for determining whether a defendant has been substantially prejudiced by the admission of evidence of a prior bad act in *United States v. Copelin,* 996 F.2d 379 (D.C.Cir.1993). There "[we did] not hold that it is *per se* plain error for a district judge to neglect to offer an immediate limiting instruction whenever evidence is admitted only for purposes of impeachment" but we did say that "there is a huge presumption of plain error" if he fails to do so. *Id.* at 384. We anticipated that only in "rare situations" would a limiting instruction not be necessary because the surrounding circumstances so clearly indicate that the defendant was not substantially prejudiced by the evidence. *Id.* at 385.

In *Copelin* itself there was a distinct possibility that the defendant would be prejudiced by the lack of a limiting instruction. At his trial for unlawful distribution of cocaine, the defendant testified that he had never seen cocaine except perhaps on television. *Id.* at 381. In order to impeach that testimony, the Government produced evidence that he had tested positive for cocaine three times during his pretrial release. This account of the defendant's conduct while awaiting trial might have inflamed the jury and led it to conclude (somewhat illogically) that Copelin was guilty of the crime charged. In particular, the connection between Copelin's bad acts and the crime for which he was on trial might have unduly influenced the jury absent an instruction to ignore it. Hence, in that case, the court held that it was plain error for the trial judge not to offer—if not immediately then at least in his final charge—to instruct the jury to consider the evidence only for the purpose of impeachment.

In contrast, it is by no means obvious that the defendant in this cocaine case was sub-

stantially prejudiced by the evidence of his prior bad acts. For one, Brawner's convictions were more than ten years behind him at the time of his trial, thus diminishing the chance that the present jury would view Brawner as a "bad man," and perhaps even making him seem to be that rara avis, the former drug distributor who has gone straight for a long time.

The important difference between this case and *Copelin*, however, is the way in which the evidence of the defendant's past crimes was put before the jury. Brawner's own attorney asked him about his prior convictions on direct examination, and she did so for a reason. She obviously believed that if she brought out his past convictions herself, then their impact would be less than if she let the prosecutor highlight them during his cross-examination of the defendant. Had the trial judge stepped in at this point in her direct examination, or for that matter when the prosecutor returned to the subject, and offered a limiting instruction to defense counsel, the judge would only have defeated the defense attorney's strategy: Brawner's testimony about his previous convictions would have hung over the silent courtroom like a black cloud for the jury to dwell upon while counsel and court conferred at sidebar. As the Kentucky Supreme Court recently explained:

> Defense counsel should be free to make as little of the admission by defendant of a prior felony conviction as possible. As a matter of trial strategy, it may be decided that [a limiting instruction] would only serve to emphasize the conviction, and hence no admonition may be requested. If, on the other hand, a limiting admonition is desired, it need only be requested.

*Hall v. Commonwealth*, 817 S.W.2d 228, 229 (Ky.1991); *see also United States v. Childs*, 598 F.2d 169, 176 (D.C.Cir.1979) (stating that "[i]t is well known that, even when a limiting instruction is likely to aid the accused's cause, astute defense counsel may prefer tactically to forego it in the interest of avoiding its inevitable focus of the jury's attention on unfavorable evidence"); 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5249, at 539

(1978) ("Critics have been skeptical regarding the utility of instructions and attorneys often prefer not to have the evidence emphasized by such futile exhortations.").

Nonetheless, read literally *Copelin* would seem to require reversal in this case, for we cannot say that this rather ordinary case presents the "rare situation" in which the surrounding circumstances clearly indicate that the defendant was not prejudiced by the introduction of his prior bad acts. By unanimous agreement of the court, however, we hold that *Copelin* is inapplicable to cases in which the defendant's prior bad acts are introduced into evidence by the defense rather than by the prosecution. Our decision to narrow *Copelin* in this manner is based upon the strategic concerns discussed above. If we are truly to leave "[d]efense counsel ... free to make as little of the admission by a defendant of a prior felony conviction as possible," *Hall*, 817 S.W.2d at 229, then the scope of the *Copelin* decision must be limited in order to leave defense counsel room to maneuver. Absent some independent basis for thinking counsel incompetent, therefore, we presume that where, as here, defense counsel brings out the defendant's prior bad acts, the defense is pursuing a strategy for minimizing the impact of that evidence, which is sure to be offered by the prosecution if the defense does not act preemptively. Once we see that defense counsel is acting strategically, we can be confident that the defendant is not substantially prejudiced for want of an immediate limiting instruction. Thus, it was not plain error for the district judge to fail sua sponte to offer Brawner a limiting instruction.

## III. CONCLUSION

To summarize, the *Copelin* decision continues to govern cases in which the prosecution brings out evidence of the defendant's prior bad acts. If such evidence is brought out by the defense, however, then the trial judge need not offer a limiting instruction unless specifically asked by defense counsel—in which case the judge must immediately provide one; that is, waiting until charging the jury at the conclusion of trial will not suffice. Defense counsel may ask for a limiting in-

struction, and hence the judge must immediately provide one: (1) after the defense brings out the evidence of prior bad acts and (2) after the prosecution returns, if it does, to the subject on cross-examination.

In this case the evidence of Brawner's prior conviction came in as part of his defense and we therefore decline to reverse his conviction because the district court failed to offer him a limiting instruction sua sponte. Brawner raises a number of other issues regarding the conduct of his trial, none of which merits attention in a published opinion. For the reasons given above, the judgment of the district court is

*Affirmed.*