UNITED STATES of America, Appellee,

v.

Francis ROBINSON, Appellant.

No. 91–3080.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 27, 1995.

Decided July 18, 1995.

Allen E. Burns, Assistant Federal Public Defender, Washington, DC, argued the cause for the appellant. On brief was A.J. Kramer, Federal Public Defender, Washington, DC.

Barbara A. Grewe, Asst. U.S. Atty., Washington, DC, argued the cause for the appellee. On brief were Eric H. Holder, Jr., U.S. Atty., and Elizabeth Trosman, John R. Fisher and Carol A. Fortine, Asst. U.S. Attys., Washington, DC.

Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN· LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Francis Robinson appeals his conviction on one count of distribution of cocaine base and one count of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Metropolitan Police Department (MPD) officers observed Robinson selling drugs outside a house at 1717 Montana Avenue, Northeast, in the District of Columbia and subsequently discovered 23 grams of cocaine base inside the house. Robinson argues that the district court improperly failed to give a limiting instruction and erred in other evidentiary rulings as well. We affirm.

## I. BACKGROUND

In the early evening hours of May 30, 1990 MPD officers Donald Bell and Bradley Belden of the MPD vice unit set up an observation post on Montana Avenue, Northeast, after receiving information that numerous narcotics sales had taken place in an area housing complex. Trial Transcript (Tr.) 70. At 5:20 PM, the officers watched as a passerby approached and talked to a man standing in the courtyard of the housing complex. Officer Bell subsequently identified the man as Robinson. Tr. 72. The man went inside the house located at 1717 Montana Avenue, came out almost immediately and handed an unidentified object to the passerby in exchange for cash. Tr. 73. A similar exchange took place between the same man and another passerby at 5:24 PM. Bell observed that the object sold during the second exchange was "small [and] white colored." Tr. 74–75. Another transaction took place at 5:27 PM with a third passerby, later identified as Rob-

ert Kennedy, who drove away in an automobile. Bell issued a radio alert for Kennedy, who was apprehended by MPD Officer Charles Sanders. Sanders recovered two white rocks from Kennedy's pants pockets, later determined to be 313 milligrams of cocaine base. Tr. 119. The drugs were 58 per cent pure. Tr. 176–77.

The activity on Montana Avenue ceased after the driver of a car passing the housing complex yelled to the seller to "watch out for the jumpout," a street nickname for narcotics police officers. Tr. 80. The seller "appeared to act very nervous," and shook his head when two more men on the street approached him and engaged him in conversation. Tr. 81. He finally returned to the house and stayed inside. Bell then radioed a description of the seller and his location to MPD Officer Walter Delpo, who on arrival knocked on the door of the house the seller had entered and spoke to the woman who answered it. The woman, Rosalyn Redmond, told Delpo that she was alone with some children. Delpo, however, heard movement, rushed up the stairs with his partner and found Robinson running toward a third floor bedroom. Tr. 147. The officers detained Robinson and took him downstairs.

Outside the house Bell identified Robinson as the seller and Robinson was arrested and searched.[1] Delpo found 460 dollars and a single-edged razor blade in a wrapper in Robinson's front pocket. Tr. 149. The officers then obtained a search warrant for the house at 1717 Montana Avenue and discovered 23 grams of cocaine base (later determined to be 53 per cent pure) in the rear bedroom on the third floor. Tr. 185, 201. The lessee of the house, Ogretta Washington, testified at trial that the rear bedroom was hers but that she had not been aware that cocaine base was in the room. She further testified that she had seen Robinson cut cocaine base with a razor blade in the bedroom

"about two or three times" previously.[2] Tr. 271–72.

Joseph Bono, a Drug Enforcement Administration chemist, and MPD Detective David Stroud testified for the government as expert witnesses. Bono testified that a batch of cocaine base could contain cocaine of both 53 per cent purity (like that of the cocaine found in the bedroom) and 58 per cent purity (like that of the cocaine sold to Kennedy) because "on the street when cocaine base is made, they don't mix it real well." Tr. 186–87. Stroud similarly opined that it was "possible" both rocks of cocaine base came from the same batch, testifying "there have been cases where a rock of crack cocaine was produced and found to have high purity on one side and the lower purity on the other side and vice-versa." Tr. 252.

Robinson maintained that he was nowhere near the Montana Avenue house until 6:10 PM on May 30th. His alibi witnesses testified that he had spent most of that afternoon waiting at a repair shop for work to be completed on his car, leaving only to briefly visit his parole officer. Parole office records indicated that Robinson signed in with both the office's security desk and his parole officer at 4:30 PM and left at either 4:45 PM (according to the security desk log) or 5:00 PM (according to the officer's log). Tr. 403, 408–09. Eric Aull testified that he drove Robinson back to the repair shop at about that time and that they did not return to Montana Avenue until 6:10 PM or 6:15 PM. Tr. 373. The proprietor of the repair shop, William Melby, testified that he did not complete work on Robinson's car until 5:45 PM or 6:00 PM. Melby further testified that Robinson arrived at his shop at approximately 3:00 PM, left the shop "around 4, 4:30, something like that," Tr. 451, returned "around 4:30, 5 o'clock, around that time," Tr. 452, and left again at 5:45 PM. Tr. 459.[3]

---

1. A photograph of Robinson taken shortly after his arrest depicted him wearing clothes that matched those described by Bell when he radioed the arresting officers: a black/blue T-shirt with a black horizontal stripe and light-colored blue jeans. Tr. 82.

2. Washington testified that she used cocaine but that the drugs found in the room were not hers,

explaining "[i]f they were my drugs, I would have smoked them." Tr. 270. She further testified that she allowed Robinson to use her bedroom to cut cocaine in exchange for drug "crumbs." Tr. 273.

3. Robinson's girlfriend, Carol Waddell, generally corroborated Aull's testimony. Tr. 433–39. Other friends or acquaintances of Robinson testified

In rebuttal the prosecution recalled Bell, who testified that Melby had told him in a pre-trial interview that Robinson had left his shop at about 5:00 PM and had been Melby's last customer of the day before he closed the shop. Tr. 509. The jury found Robinson guilty of one count of distribution of cocaine base and one count of possession of cocaine base with intent to distribute. The district court sentenced Robinson to 136 months' imprisonment on the distribution count and 60 months' imprisonment on the possession with intent to distribute count, to run concurrently.

## II. DISCUSSION

Robinson makes three challenges to his conviction. He contends that the district court committed reversible error by failing to instruct the jury that Officer Bell's rebuttal testimony could be considered only as impeachment evidence and by admitting Washington's testimony that she had seen Robinson cut cocaine base at other times. In addition Robinson challenges certain expert testimony as well as alleged prosecutorial vouching. We find no reversible error in any of the district court's rulings.

### A. *Limiting Instruction*

■ Although Robinson did not ask the district court to give the jury a limiting instruction regarding Bell's rebuttal testimony, we have recognized that a district court may commit error by failing to give a cautionary instruction when admitting certain impeachment testimony even if the defendant does not request the instruction. *United States v. Copelin*, 996 F.2d 379, 385 (D.C.Cir.1993). Our review is to determine whether the claimed error affected substantial rights and had an unfair prejudicial impact on the jury's deliberations.[4] *Id.* (citing *United States v.*

*Young*, 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985)).[5]

■ Relying on the *Copelin* holding, Robinson argues that Bell's testimony substantially prejudiced him in that the jury could have drawn an inference from it that he had in fact left Melby's auto repair shop at 5:00 PM. We disagree for two reasons. First, the district court's omission here is different from the one discussed in *Copelin*. In *Copelin*, where the defendant was also charged with possession and distribution of crack, the district court failed to issue an instruction limiting the jury's consideration of impeachment evidence, otherwise inadmissible under Federal Rule of Evidence 404(b), that the defendant had previously tested positive for cocaine use. *Id.* at 382. We concluded that a limiting instruction was necessary in that case because

> [t]he information regarding Mr. Copelin's positive drug tests was "bad acts" evidence of the most prejudicial sort. Not only did the revelation that he used cocaine on other occasions subject him to the opprobrium that members of the jury may have felt toward drug users, but it also tended to bolster the government's contention that he was the man who sold the same drug . . . on the day in question.

*Id.* at 385.

The impeachment evidence in *Copelin* was thus impermissible because it not only affected the jury's view of the defendant himself but also allowed the jury to infer from Copelin's past drug use that he was guilty of the charged offense. Here, the prejudicial effect of Bell's rebuttal testimony was more remote as it did not indicate any prior bad acts by Robinson. Although the jury could have inferred that Melby had not testified truthfully when he stated that Robinson did not leave his shop until 6:00 PM and accordingly could

---

that they had not seen Robinson at the Montana Avenue house in the early afternoon. Tr. 321–22 (Michael Goggins); Tr. 331–34 (Keana Hinton); Tr. 346–47 (Arnetta Jackson).

4. The plain error standard applies here because at trial Robinson made only a hearsay objection to the admission of the testimony. Tr. 508.

5. We have also explained that "[t]o be noticed . . . the error must be clear or, equivalently,

obvious and must have affected the outcome of the District Court proceedings." *United States v. Clarke*, 24 F.3d 257, 266 (D.C.Cir.1994) (citation and internal quotation marks omitted). The government concedes that "appellant has met his burden of showing that the failure to give the instruction was error and that the error was obvious." Govt.Br. at 29.

have discounted Robinson's alibi defense, that inference would have no more than the impeachment effect Robinson concedes is permissible. Robinson Br. at 24 (statement "was only admissible to impeach Melby").

Second, the fate of Robinson's alibi defense did not rest entirely on Bell's impeachment of Melby's version of events. Melby weakened his own testimony by first stating that the car repairs had been completed at 4:45 PM and then quickly changing his account. Tr. 452.[6] Moreover, Aull independently corroborated Robinson by testifying that he and Robinson had been at Melby's shop until approximately 6:00 PM. Tr. 371. We thus conclude that the absence of a limiting instruction was not plain error.

### B. *Rule 404(b) Evidence*

■ Robinson next argues that Washington's testimony that she had seen him cut cocaine base in the third floor bedroom of the Montana Avenue residence was evidence of prior bad acts inadmissible under Federal Rule of Evidence 404(b).[7] We review the admissibility of rule 404(b) evidence with a two step analysis. "The first step requires that the evidence be probative of some material issue other than character. The second step requires that the evidence not be inadmissible under Rule 403." *United States v. Clarke*, 24 F.3d 257, 264 (D.C.Cir.1994) (citations omitted).

Washington's testimony meets both steps. The district court admitted the evidence as relevant to the issues of intent, common scheme and possession. Tr. 260. We agree that the testimony was probative of Robinson's intent, particularly in light of Stroud's earlier testimony that razor blades are "very popular amongst the crack dealers" to "cut a big rock of crack cocaine down to smaller

pieces of crack cocaine." Tr. 248, 249. Thus, "the evidence is not barred by Rule 404(b) because it was offered to show more than ... character. The evidence of this prior transaction is probative of intent, knowledge and plan...." *United States v. Washington*, 969 F.2d 1073, 1081 (D.C.Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993).[8] The district court also instructed the jury that the evidence could be considered to show "that [Robinson] had possession of drugs *at one time.*" Tr. 272 (emphasis added). Robinson argues that the evidence was clearly inadmissible to establish possession; but as the emphasized language indicates, the jury was instructed, albeit imprecisely, that it could consider the evidence as relevant to the issue of absence of mistake. *United States v. Rogers*, 918 F.2d 207, 210 (D.C.Cir.1990). Although the district court did not expressly mention the rule 403 step, he necessarily weighed the probative and prejudicial effects in admitting the evidence. Especially in light of the limiting instruction, we uphold the district court on this issue. Tr. 271–72.

### C. *Expert Testimony and Prosecutorial Vouching*

■ Robinson further asserts that the district court erred by allowing Bono and Stroud to testify that the cocaine base taken from Kennedy and the cocaine base found in the Montana Avenue house could have come from the same batch of cocaine base. Our review is for abuse of discretion. *United States v. Carswell*, 922 F.2d 876, 878 (D.C.Cir.1991). Although Robinson objected that the "street" manufacturing of cocaine base was outside Bono's expertise, Tr. 187, he did not dispute the district court's qualification of Bono as an expert in "forensic

---

6. When asked what time he finished with Robinson's car, Melby responded "I finished the job quarter to five, or six o'clock, or something like that. I mean, quarter to six, or quarter to— quarter to six, around that time in between six o'clock."

7. The government argues that Robinson waived his objection to the 404(b) evidence by stating "[a]s long as a cautionary instruction is given, I have no problem with that" during an earlier bench conference. Tr. 260. When the testimony

was given, however, his counsel twice objected, Tr. 271, and the only apparent basis of the objection was rule 404(b).

8. The holding in *United States v. Simpson*, 992 F.2d 1224 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 286, 126 L.Ed.2d 236 (1993), relied on by Robinson, is distinguishable for this reason. In *Simpson*, "the AUSA made no attempt to characterize the prior bad acts evidence as relevant to any permissible purpose." *Id.* at 1229.

chemistry, analytical chemistry." Tr. 173. Bono's conceded expertise amply permitted the district court to allow the witness to testify on the manufacturing of cocaine base. Tr. 173. The same is true of Stroud, who qualified as an expert in the "street use of narcotics," Tr. 239, and expressly declined to provide an expert opinion on the frequency of purity variations in a cocaine base batch. Tr. 255.

Finally Robinson alleges that the prosecution improperly vouched for Bell's testimony in its closing argument by stating "Well now, ladies and gentlemen, if that's a fact, if officer Bell was willing to risk his reputation and his career to come in here and perjure himself," Tr. 549, further arguing that the police "were doing their jobs" and had "no stake" in the case. Tr. 550. But Robinson had raised Officer Bell's credibility as an issue in his own closing argument and throughout the trial, arguing that Bell had been harassing Robinson and others in the Montana Avenue area. Tr. 535. The prosecutor's remarks in response to Robinson's assertions thus did not constitute improper vouching. *United States v. Nnanyererugo*, 39 F.3d 1205, 1209 (D.C.Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995); *see also United States v. Monaghan*, 741 F.2d 1434, 1439 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985) ("The prosecution cannot be shut off from fair comment on the strength of its own witness's testimony, particularly where it is relying principally on one witness and that witness has been severely challenged by the defense."); *cf. United States v. Boyd*, 54 F.3d 868, 871–72 (D.C.Cir.1995) (in closing argument prosecutor erroneously vouched for police witnesses, relying on evidence outside record).

For the foregoing reasons, the judgment of the district court is

*Affirmed.*