**UNITED STATES of America, Appellee,**

v.

**Robert RHODES, Appellant.**

**No. 92–3132.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 10, 1995.

Decided August 22, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied Nov. 1, 1995.

Lois G. Wye, with whom John P. Dean (appointed by this court), Washington, DC, was on the briefs, argued the cause, for appellant.

E. Vaughn Dunnigan, Asst. U.S. Atty., with whom Eric H. Holder Jr., U.S. Atty., and John R. Fisher, Asst. U.S. Atty., Washington, DC, were on the brief, argued the cause, for appellee.

Before EDWARDS, Chief Judge, and BUCKLEY and GINSBURG, Circuit Judges.

BUCKLEY, Circuit Judge:

In 1992, Robert Rhodes was convicted of possessing narcotics with intent to distribute them and of using or carrying a firearm during or in relation to a drug trafficking offense. He seeks reversal of his convictions on three independent grounds. First, he argues that, in light of a prior civil forfeiture proceeding, his criminal convictions were obtained in violation of the Fifth Amendment's Double Jeopardy Clause. Second, he contends that the district court committed plain error when it admitted certain impeachment testimony. Finally, he insists that the district court's failure to give, *sua sponte*, an instruction limiting the jury's use of that impeachment testimony requires reversal. As we hold that the civil forfeiture proceeding and the criminal trial were predicated on

factually distinct offenses and that the district court did not commit reversible error, we affirm.

## I. BACKGROUND

At 6:40 a.m. on the morning of April 2, 1991, agents of the Bureau of Alcohol, Tobacco, and Firearms ("BATF") and the District of Columbia Metropolitan Police Department executed a search warrant at 5115 Seventh Street, N.W. The agents discovered appellant Rhodes and Antonio Peyton in the front bedroom on the second floor of the house. In the same room they found a triple-beam scale, a bowl with white residue on it, several plastic baggies, a safe, and several firearms in plain view as well as several hidden firearms. The agents removed the door to the safe and found inside $1,306 in cash, more than 460 grams of powder cocaine, more than 60 grams of crack cocaine, a .32–caliber revolver, mail addressed to appellant, including bank statements, a key to a safe-deposit box, and various other items. Rhodes was taken into custody.

A grand jury returned an indictment charging Rhodes with, *inter alia,* possession of crack with intent to distribute, possession of powder cocaine with intent to distribute, and use of a firearm during or in relation to a drug trafficking offense. Another count of the indictment sought criminal forfeiture of a 1989 Chevrolet Corvette (registered in the name of Rhodes's fiancee), money contained in bank accounts, and the contents of a safe-deposit box.

In December 1991, Rhodes's first trial ended when the jury could not agree on a verdict and the district court declared a mistrial. In the meantime, the Drug Enforcement Administration ("DEA") initiated a separate administrative forfeiture proceeding against the Corvette, jewelry taken from the safe-deposit box, money seized from the bank accounts, and the cash found in the safe at 5115 Seventh Street. Because neither Rhodes nor anyone else responded to the DEA's notice of seizure letters, all the property was forfeited to the U.S. Government in 1991.

At Rhodes's second trial, which commenced on February 12, 1992, Peyton appeared as a defense witness. He testified that Rhodes did not live at 5115 Seventh Street on the day of the arrest and that the guns and drugs found at 5115 Seventh Street did not belong to Rhodes. After the defense rested, the Government offered to present Jennifer Tien, a probation officer who had worked with Peyton, to testify that Peyton had told her that he and Rhodes had been selling drugs and firearms from 5115 Seventh Street. The Government argued that Tien's testimony would impeach Peyton and offered the evidence for that purpose. The district court allowed the testimony over Rhodes's hearsay objection and failed to give, *sua sponte,* an instruction limiting the jury's use of it to the purpose for which it was admitted. The criminal forfeiture charge was not submitted to the jury. The second jury convicted Rhodes of possessing crack and powder cocaine with intent to distribute and using or carrying a firearm during or in relation to a drug trafficking offense.

## II. DISCUSSION

### A. Double Jeopardy

The Double Jeopardy Clause provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. Const. amend. V. This provision has been construed to prohibit, among other things, the imposition of multiple punishments in separate proceedings. *See United States v. Halper,* 490 U.S. 435, 440 & 450, 109 S.Ct. 1892, 1897 & 1902, 104 L.Ed.2d 487 (1989). Rhodes argues that the administrative forfeiture of at least some of the property punished him for the same narcotics and firearms offenses for which he was subsequently convicted and imprisoned. Accordingly, Rhodes maintains that his criminal trial put him in jeopardy a second time for the same offenses and thus violated the Constitution.

■ At the outset, we dismiss the Government's contention that Rhodes waived his Double Jeopardy claim. Although he did not raise this challenge before the district court, he had good reason for the omission: At the time of his trial, our circuit law was clearly contrary to his position. In *United States v.*

*Price,* 914 F.2d 1507 (D.C.Cir.1990), a case decided prior to Rhodes's trial, we held that the Double Jeopardy Clause did not apply to proceedings under 21 U.S.C. § 881(a)(6)—the statutory provision under which Rhodes's property was seized—because, among other reasons, that provision did not serve *"primarily* a penal purpose." *Id.* at 1512 (emphasis in original; internal quotation marks omitted). While his convictions were pending on appeal, however, two intervening Supreme Court decisions, *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), arguably undermined the rationale of *Price.* As we have recently noted, "we may consider issues not raised at trial where a supervening decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to challenge it would have appeared pointless." *United States v. Washington,* 12 F.3d 1128, 1139 (D.C.Cir.1994). Accordingly, we address his Double Jeopardy claim on the merits.

Although the parties have demonstrated a dazzling familiarity with the intricacies of the Supreme Court's Double Jeopardy jurisprudence, debating such questions as whether jeopardy attached in the administrative forfeiture proceeding notwithstanding Rhodes's failure to respond to the DEA's notice of seizure letters, we are spared such inquiries because Rhodes's Double Jeopardy claim lacks the necessary factual basis. It is beyond dispute that the Fifth Amendment imposes no bar to multiple prosecutions for factually distinct offenses. *See* U.S. Const. amend. V ("nor shall any person be subject for the *same offence* to be twice put in jeopardy") (emphasis added). To illustrate, if a recidivist murderer committed three unrelated homicides on three occasions, the Double Jeopardy Clause would not prohibit the Government from conducting successive trials for each of three crimes. Assuming *arguendo* that the administrative forfeiture punished Rhodes within the meaning of the Clause, the administrative proceeding and the subsequent criminal trial punished him for factually distinct offenses.

■ Rhodes was convicted of possession with intent to distribute the crack and powder cocaine that was seized during the April 2, 1991, search of 5115 Seventh Street. By contrast, the administrative forfeiture proceeding was predicated on the theory that the property in question constituted the proceeds from the sales of drugs Rhodes possessed prior to the April 2nd search. *See* Aff. of Austin Banks in Support of Gov't's App. for a Seizure Warrant at 4–8 (asserting that, because Rhodes had been unemployed for more than a year prior to his April 2nd arrest and because the record of large cash deposits in his bank accounts between August 1989 and March 1991 was "consistent with an individual who is actively involved in the distribution of narcotics," there was probable cause to conclude that the funds in the two bank accounts and the contents of a safe-deposit box in his name "represent proceeds derived from illegal narcotic trafficking"). Hence, to the extent that the forfeiture proceeding punished Rhodes within the meaning of the Double Jeopardy Clause, it punished him for the sale of drugs other than those that were the subject of his prosecution and conviction.

It is no answer to argue, as Rhodes does, that the criminal forfeiture count asserted that the property to be forfeited "constitut[ed] and derived from the proceeds" of the violations listed in the prior counts, namely, the possession with intent to distribute and the firearms charges. The criminal forfeiture count was never submitted to the jury, and Rhodes cannot overcome the stubborn fact that the administrative forfeiture proceeding and the criminal forfeiture count were predicated on factually distinct offenses.

B.  Impeachment Testimony

Rhodes argues, in the alternative, that we must reverse his convictions and remand the cause for a new trial because the district court erred in allowing Ms. Tien to testify and, having done so, erred again in failing to provide the jury with a limiting instruction. We reject both arguments.

*1. Admission of the testimony*

■ Rhodes contends that the admission of Ms. Tien's testimony violated Rule 613(b) of the Federal Rules of Evidence, which provides in pertinent part that

> [e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

Fed.R.Evid. 613(b). The Government concedes that the prosecutor failed to lay the necessary foundation for Tien's testimony: Peyton was not given the opportunity to explain or deny his prior inconsistent statements as required by the Rule. At trial, however, Rhodes did not object to the introduction of the testimony on the basis of Rule 613. Accordingly, we review the court's failure to require compliance with Rule 613(b) for plain error. Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

The Supreme Court has made it clear that we may take note of an error that is not objected to "only if it is plain [that is to say, clear or obvious] *and* affects substantial rights." *United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (internal quotation marks and brackets omitted) (emphasis added). The second requirement imposes upon the criminal defendant the burden of persuading the appellate court that the error was prejudicial because it "affected the outcome of the District Court proceedings." *Id.* at ——, 113 S.Ct. at 1778. We find no such prejudice in this case.

Although Tien's testimony did bear on Rhodes's defense that the drugs and weapons seized from 5115 Seventh Street did not belong to him, the Government's case-in-chief included strong evidence that these items were his. A BATF agent testified that, on the morning of April 2, 1991, he found Rhodes in a bedroom with firearms, a safe, and various drug paraphernalia. Furthermore, a key found on a bed near Rhodes fit the safe, inside of which were bank state-ments in Rhodes's name and a key that fit a safe-deposit box that was also in Rhodes's name. The safe contained the crack and powder cocaine that Rhodes was convicted of possessing. The Government also presented testimony that Rhodes sold drugs and bought firearms to protect his drugs and drug money. In light of this extensive evidence, we find that Rhodes has not carried his burden of showing that he was prejudiced by the court's failure to insist on compliance with Rule 613(b).

*2. Limiting instruction*

■ The district court allowed the Government to present Tien's testimony in order to impeach Peyton; otherwise, it would have been inadmissible as hearsay. Fed.R.Evid. 802. Rhodes argues that the district court committed plain error when it failed to instruct the jury that the testimony was admitted solely for the purpose of assessing Peyton's credibility and was not to be considered substantively. Indeed, Rhodes correctly observes that, under our prior cases, "there is a huge presumption of plain error when a trial judge omits a cautionary instruction when admitting impeachment evidence to which the jury could give substantial effect against a criminal defendant." *United States v. Copelin*, 996 F.2d 379, 385 (D.C.Cir.1993) (summarizing previous circuit cases).

In *Copelin*, however, we failed to consider Rule 105 of the Federal Rules of Evidence, which provides: "When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." Fed.R.Evid. 105 (emphasis added). As we have recently noted, "Rule 105 clearly places upon defense counsel the burden of requesting an instruction limiting the use to which the jury may put [such] evidence. . . ." *United States v. Brawner*, 32 F.3d 602, 605 (D.C.Cir.1994). Indeed, we have explained that there are occasions when, for tactical reasons, defense counsel may wish to forego such a limiting instruction because it might focus the jury's attention on the damaging evidence. *Id.* at 606. Here, once Rhodes's counsel failed in his effort to exclude Tien's testimony, he may well have elected to dispense with a limiting

1454

instruction in order to avoid highlighting the evidence.

In light of the Supreme Court's teaching that the Federal Rules of Evidence displace common-law precedents to the extent that the two are inconsistent, *see, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993) (holding that common law standard for the admission of expert testimony was superseded by Fed.R.Evid. 702), and because Rule 105 commands that an appropriate limiting instruction shall be available "upon request," we conclude that we cannot impose on district courts the obligation to give such an instruction *sua sponte.* Accordingly, we hold that the court did not err when it failed to give an instruction limiting the jury's use of Tien's testimony in the absence of a request for such an instruction. To the extent that our holding is inconsistent with *Copelin* and like cases, they are overruled.*

### III. CONCLUSION

Rhodes was not twice put in jeopardy for the "same offence," nor did the district court commit an error that warrants relief on appeal. Accordingly, his convictions are

*Affirmed.*

---

* Our holding overruling this aspect of *Copelin* and similar cases has been circulated to and approved by the full court and thus constitutes the law of the circuit. *See Irons v. Diamond,* 670 F.2d 265, 268 n. 11 (D.C.Cir.1981).