# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist SCOTT W. KOCH**
**United States Army, Appellant**

ARMY 20160107

Headquarters, Fort Hood
Wade N. Faulkner and Rebecca K. Connally, Military Judges
Lieutenant Colonel Travis L. Rogers, Acting Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher Coleman, JA; Captain Patrick J. Scudieri, JA (on brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Erik K. Stafford, JA; Major Michael E. Korte, JA; Captain Tara O'Brien Goble, JA (on brief).

29 January 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

We address several issues in this appeal. After appellant was acquitted of more serious offenses, a court-martial panel sentenced appellant to a dishonorable discharge, eight years of confinement, total forfeiture of all pay and allowances, and reduction to the grade of E-1 for three specifications of providing alcohol to minors and two specifications of touching or grabbing his daughter's buttocks.[1]

---

[1] The panel found appellant guilty of three specifications of violating a Fort Hood regulation prohibiting appellant from giving alcoholic beverages to a person under the age of twenty-one, and two specifications of abusive sexual contact with a child in violation of Article 92, 120, and 120b, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 892, 920, 920b (2006 & Supp. IV 2010; 2012).

We initially address two errors assigned by appellant. The first is whether there was sufficient evidence to support appellant's convictions for abusive sexual contact when he grabbed his daughter's buttocks. Our conclusion that there is sufficient evidence of appellant's intent is a close one and relies on a close evidentiary call, which we explain below. Second, we address appellant's claim that the government's sentencing argument was improper. We find no plain error.

Although not raised by appellant as assigned errors, we also address several issues which merit relief. First, the military judge gave a *Hills* propensity instruction which implicates one of the two sexual offenses of which appellant was convicted. *See United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). Second, we address the appropriateness of the sentence. Independent of our setting aside the findings for one specification, we find the sentence to be too severe. In determining the sentence that "should be approved," each of us arrives at a different conclusion. Senior Judge Mulligan would approve a sentence to confinement of six years. Judge Febbo would approve a sentence of five years and six months. I would approve a sentence of two years and six months. We reconcile these differences and, reassessing the sentence after dismissing one specification, provide appellant relief in our decretal paragraph.

## BACKGROUND[2]

In the fall of 2013, SS and AK were thirteen-year-old girls living on Fort Hood. Miss AK was appellant's stepdaughter. Around the time of Halloween, SS and AK had a slumber party at appellant's house. Both girls alleged that appellant provided them with alcohol. The two girls decided to go for a walk. Appellant insisted on joining them, and brought more alcohol. Once in the woods appellant and the two girls played drinking games. The girls alleged that the behavior turned sexual. They testified that appellant rubbed their genitals and had oral and vaginal sex with them.

Both girls also testified that appellant sometimes slapped AK's buttocks. Miss SS described it as being like a husband would slap his wife.

---

[2] Our recitation of facts in this section is for purposes of assisting the reader in understanding the facts that were alleged at trial so that the rest of the opinion can be understood in context. In doing so, here we are not exercising our fact-finding power under Article 66(c), UCMJ. As we explain more fully below, appellant was acquitted of most of the sexual offenses.

## LAW AND DISCUSSION

*A. Legal and Factual Sufficiency of the Evidence*

Appellant was charged and convicted of two specifications of touching the buttocks of his step-daughter, AK. Each offense alleged that the touching was a "sexual contact" which required the government to prove that the touch was made with an intent to "abuse humiliate, or degrade any person" or to "arouse or gratify the sexual desire of any person." *See Manual for Courts-Martial, United States* (2012 ed.) [*MCM*], App. 28, ¶ 45.a.(t)(2), A28-3; *MCM*, ¶¶ 45b.a.(h)(1), 45.a.(g)(2).[3] Appellant alleges that there was insufficient evidence to support the convictions.

In a submission pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that parallels the assigned error, appellant notes numerous non-criminal circumstances "in which a parent would use his or her hand to slap/spank the buttocks of a child."

At trial, the government focused its evidence on the sexual offenses of which appellant was ultimately acquitted.[4] The two abusive sexual contact offenses received passing attention. As a result, appellant's assignment of error is not without some merit and requires attention.

*1. Legal sufficiency of the sexual contact offenses*

We review questions of legal sufficiency de novo. *United States v. Ashby*, 68 M.J. 108, 115 (C.A.A.F. 2009) (citation omitted). In conducting this legal sufficiency review, "the relevant question an appellate court must answer is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (internal quotation marks omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Herrmann*, 76 M.J. 304, 307 (C.A.A.F. 2017).

Miss AK testified that appellant would "touch my butt sometimes" and that appellant "would slap or grab my butt" with "his hand." Miss AK further testified that appellant would hug her and kiss her while placing his tongue in her mouth.

---

[3] One specification alleged a violation of Article 120, UCMJ (2006). The second specification alleged a violation of Article 120b, UCMJ (2012). For the purposes of this discussion there is no substantive difference between the two statutes.

[4] Appellant was acquitted of one specification of indecent liberties with a child, three specifications of rape of a child, one specification of abusive sexual contact with a child, and assault, charged under Articles 120, 120b, and 128, UCMJ.

Miss AK did not offer direct evidence as to appellant's intent when touching her buttocks.

Miss SS testified as follows:

> Q. How would you describe the way [appellant] was touching his stepdaughter?
>
> A. He would slap it. Like a quick slap.
>
> Q. Can you compare it to the way he would touch someone else?
>
> A. He would touch his wife like that.

Miss SS also agreed that the touching was inappropriate and that it was "not any normal way that a father would touch their daughter."

Given the low threshold for establishing legal sufficiency, a reasonable factfinder could infer from this testimony that appellant's slapping of his stepdaughter's buttocks was with the required intent. Accordingly, we turn our attention to the closer question of whether the evidence is factually sufficient.

### 2. Factual sufficiency of the sexual contact offenses

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we ourselves] are convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

While sufficient to survive a legal sufficiency review, the testimony of SS and AK quoted directly above is, alone, *insufficient* to convince us beyond a reasonable doubt that appellant touched AK's buttocks with the required intent.

However, there was substantial evidence in the record that appellant had a sexual interest in his stepdaughter AK. AK testified that appellant masturbated in her presence and had oral and vaginal intercourse with her. From this evidence, one can infer that the touching of her buttocks was done with a sexual intent. Concerning, however, is that this evidence formed the basis of the offenses for which appellant was acquitted. Only if allowed to consider this evidence would we find factually sufficient evidence to establish appellant's intent.[5] But may we?

---

[5] We state this plainly for reasons of judicial economy in case we have erred in our reasoning.

We believe the Court of Appeals for the Armed Forces' (CAAF) decision in *United States v. Rosario* answered this question in the affirmative when the court held that:

> When the same evidence is offered at trial to support two different offenses, a Court of Criminal Appeals is not necessarily precluded from considering the evidence that was introduced in support of the charge for which the appellant was acquitted when conducting its Article 66(c), UCMJ, legal and factual sufficiency review of the charge for which the appellant was convicted. Defendants are generally acquitted of offenses, not of specific facts, and thus to the extent facts form the basis for other offenses, they remain permissible for appellate review.

76 M.J. 114, 117 (C.A.A.F. 2017).

We conclude that we may consider the evidence in the record, to include credible evidence of offenses of which appellant was acquitted, in reviewing the factual sufficiency of the offenses for which appellant was convicted. The evidence was admitted without limitation. *See* Military Rule of Evidence [Mil. R. Evid.] 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the military judge, upon request, shall restrict the evidence to its proper scope. . . ."); *see also* Mil. R. Evid. 404(b). The military judge instructed the panel, without objection, that if "evidence has been presented which is relevant to more than one offense, you may consider that evidence with respect to each offense to which it is relevant."

The CAAF "has repeatedly concluded that a pattern of lustful intent, established in one set of specifications, could be used by factfinders as proof of lustful intent in a different set of specifications." *United States v. Tanksley*, 54 M.J. 169, 175 (C.A.A.F. 2000) (citations omitted) (*overruled in part on other grounds by United States v. Inong*, 58 M.J. 460, 461 (C.A.A.F. 2003)).

"The nub of the matter is whether the evidence is offered for a purpose other than to show an accused's predisposition to commit an offense." *Id.* Here, (with a fatal exception we discuss next), the military judge made clear that the panel could not use propensity evidence when determining appellant's guilt to the sexual contact offenses for touching AK's buttocks.

In *Tanksley*, the CAAF rejected the accused's suggestion that using evidence of one offense to prove the accused's intent as to another offense "diluted the presumption of innocence." *Id.* at 175. In *United States v. Guardado*, we similarly ruled that the CAAF's decision in *Hills* prohibiting the use of evidence from charged

sex offenses did not extend to prohibiting intent evidence allowed by Mil. R. Evid. 404(b). *United States v. Guardado*, 75 M.J. 889, 895-96 (Army Ct. Crim. App. 2016), *rev'd on other grounds*, 77 M.J. __, 2017 CAAF LEXIS 1142 (C.A.A.F. 12 Dec. 2017).[6]

Given our understanding of *Rosario* and *Tanksley* we find the evidence sufficient in all regards.

### B. The Hills Instruction

Although not an assigned error we identify an issue in the case that requires relief. Over defense objection, the military judge announced her intention to instruct the members of appellant's propensity to commit sexual offenses based on charged misconduct. *See* Mil. R. Evid. 414; *Hills*, 75 M.J. at 353. During an Article 39(a) session the military judge explained the offenses to which her ruling would apply.

Appellant was acquitted of each offense that would have been implicated by the military judge's ruling. This ordinarily would have mooted any prejudice from the erroneous *Hills* instruction.[7]

However, the military judge did not instruct the panel as she intended. Although the first half of the instruction correctly listed the specifications to which the *Hills* instruction would apply, during the second half of the instruction the military judge misspoke. Instead of applying the *Hills* instruction to Additional Charge III, Specification 1 as intended, the military judge instructed the panel that they could consider the accused's propensity to commit sexual offenses as to Additional Charge II, Specification 1.[8]

---

[6] The CAAF declined to address whether the Mil. R. Evid. 404(b) instruction in *Guardado* violated that court's holding in *Hills* as the issue fell outside of the scope of the issues granted by the court. 77 MJ __, 2017 CAAF LEXIS 1142 at *12 n.1.

[7] Although Specification 2 of Additional Charge III was included in the propensity instruction, the panel was never instructed that they were allowed to consider the appellant's propensity to commit sex offenses when determining appellant's guilt as to this specification.

[8] As Additional Charge II had only one specification, it was listed in the Flyer as "The Specification." This specification, of which appellant was convicted, alleged abusive sexual contact with a child, AK, in violation of Article 120, UCMJ.

6

Within the context of the entire trial it is clear that the military judge did not intend to give a *Hills* instruction to The Specification of Additional Charge II.[9] However, the panel was not privy to the military judge's ruling at the Article 39(a) session. Thus, in determining whether the instructions given to the panel were clear we must review any confusion from the viewpoint of the panel.

The panel was instructed, in part, that they could consider propensity evidence when determining guilt as to Additional Charge II, Specification 1. Although this was inconsistent with the earlier part of the military judge's instructions, we cannot discount the possibility that the panel misunderstood the instruction. As we look at a *Hills* error of constitutional dimension we are unable to find the error to be harmless. Accordingly, we set aside the affected specification.

### C. Improper Argument

Appellant alleges that the trial counsel made improper argument by commenting on appellant's pretrial silence, by imputing his own personal beliefs into the trial, and by arguing evidence not admitted.

We find that any error did not amount to plain error.

### 1. Standard of Review

In *United States v. Kelly* we found that an appellant who fails to object to improper argument waives, not forfeits, the error. 76 M.J. 793, 797-98 (Army Ct. Crim. App. 2017). In doing so we applied the plain language of the rule, as well as our superior court's interpretation of identical language in a different rule. In *United States v. Ahern,* the CAAF described identical language in Mil. R. Evid. 304 ("Confessions and admission") as "unambiguously" prescribing waiver. 76 M.J. 194, 197 (C.A.A.F. 2017). Indeed, we noted that the CAAF found that this court had committed error by testing for plain error when *Ahern* was before our court. *Kelly*, 76 M.J. at 797 (citing *Ahern*, 76 M.J. at 198).

Our sister court in the Department of the Navy initially followed our lead. *See United States v. Motsenbocker*, No. 201600285, 2017 CCA LEXIS 539, *30 (N.M. Ct. Crim. App. 10 Aug. 2017). But then on reconsideration, that court thought better of it. *United States v. Motsenbocker*, No.201600285, 2017 CCA LEXIS 651, *7 (N.M. Ct. Crim. App. 17 Oct. 2017) (citing *United States v. Pabelona,* 76 M.J. 9, 11 (C.A.A.F. 2017); *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005); and *United States v. Diffoot*, 54 M.J. 149, 151 (C.A.A.F.

---

[9] The error was repeated in both the written and oral instructions provided to the panel.

2000), in distinguishing *Ahern* and applying a plain error analysis to allegations of improper argument not preserved by an objection).

Regardless of how persuasive our sister court's discussion of *Ahern* as applied to unpreserved error may be (see concurring and dissenting opinions below) we are obligated to follow the precedent of this Court.[10]

Our superior court has granted a petition to decide this issue. *United States v. Kelly*, No. 17-0559/AR (C.A.A.F. 20 Dec 2017) (order). As we find any error in this case does not amount to plain error, for purpose of judicial economy we apply waiver but will also test for plain error.[11]

### 2. *Commenting on appellant's silence*

Appellant alleges that the italicized language below in the government's argument was an improper comment on appellant's right to silence.

> That night during a sleepover the accused, Specialist Koch, gave them alcohol, walked with them into the woods, and raped them both.
>
> Now, keeping secrets is hard. There are three people who knew the secret. The two girls and the accused. *It is fair to say that he wasn't talking.* As far as he knew, neither were these two girls. Fortunately, that secret was too much to bear for one of those girls, [SS]. So, now over two years later on New Year's [Eve] 2014 going into '15, she had to tell her tale.

(emphasis added).

---

[10] In any event, we see a tension in the law. If the logic of *Ahern* applies to Rule for Court-Martial [R.C.M.] 919 ("Argument by counsel on findings"), then an accused waives unpreserved error in argument, arguably contrary to a large volume of case law. If *Ahern* does not apply to R.C.M. 919, it means that identical language in the Manual for Courts-Martial "unambiguously" means waiver in one instance but forfeiture in the other.

[11] If we faulted in *Kelly*, it was trying to resolve this conflict too early instead of leaving it to when it was squarely presented for our superior court to resolve. The difference between the two standards of review will only matter when an accused would be entitled to relief under a plain error standard but not entitled to relief upon a finding of waiver. That was not the case in *Kelly*. Nor is it the case here.

Appellant alleges that the language above was "a direct comment on appellant's right to remain silent" and it "encouraged the panel to draw a negative inference on appellant not speaking to law enforcement."

"A constitutional violation occurs only if either the defendant alone has information to contradict the government evidence referred to or the jury 'naturally and necessarily' would interpret the summation as comment on the failure of the accused to testify." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (quoting entirely *United States v. Coven*, 662 F.2d 162, 171 (2d Cir. 1981)). Taken in context of the entire argument, in a case where the accused testified, we do not find plain error. The comment does not "clearly" or "obviously," or "naturally and necessarily" improperly comment on appellant's right to silence during the pre-investigative stage of the case to which the trial counsel was referring.

### 3. *Inserting personal beliefs into argument*

Appellant alleges that the italicized language below improperly inserted the prosecutor's beliefs into the trial.

> They [SS and AK] are in seventh grade, middle school, and they are drinking rum and vodka in the presence of one of their parental figures at night. And contrary to discouraging them, he [appellant] is actually encouraging them. They are passing the bottle around. They are all having a good time.
>
> And since the accused testified that he drinks pretty regularly on Friday nights, his tolerance is reasonable to infer is pretty high. *I don't think those 13 year old's* [sic] *tolerance is very high.* And that is what he was counting on. Because even though had [sic] groomed [AK] for years and crossed that line every step of the way, he had never done it with [SS] before. He didn't know how she was going to react. So, a little liquid courage maybe. A little liquid consent could help.

(emphasis added).

Appellant correctly notes that the trial counsel may not give his opinion as to the weight of the evidence in the manner that he did. *See Fletcher*, 62 M.J. at 179-80. While the trial counsel could have argued, as he did with his argument regarding the accused's tolerance of alcohol, that it is fair inference from the evidence that AK's and SS's tolerance to alcohol was low, his personal opinion on the matter was irrelevant. We do not, however, find plain error. The argument above was addressing the sexual offenses of which the panel acquitted appellant. Accordingly,

9

we do not find appellant has met his burden of establishing material prejudice to a substantial right.

### 4. Improper use of statistics and expert testimony

During their case in chief the government qualified Dr. Turner as an expert witness to explain counter-intuitive behavior of child sex victims. Dr. Turner testified that the rate at which victims of child sexual assault report the offense was "sometimes" "as []low as 2-6 percent." During cross-examination Dr. Turner was asked if when an alleged victim tells inconsistent stories it could be because she had fabricated the allegation. Dr. Turner testified "[i]t is possible."

In appellant's closing argument appellant argued that a government expert witness had testified that it was possible that AK and SS had fabricated the allegations. On appeal, appellant objects to a portion of the government argument made in rebuttal:

> Dr. Turner testified that there are some studies showing that reporting of sexual abuse by girls is as low as 2 to 6 percent. 2 to 6 percent of society. *Yet, somehow this small fraction are both liars who made this story up whole cloth.*
>
> Now, the defense made a big deal about [how Dr. Turner] said that it is possible that [AK] and [SS] made this up. Anything is possible folks. And Dr. Turner would not be much of an expert if she said, "No, absolutely not. I am a human lie detector. I can look in their eyes and can see by your [sic] pupils that you are telling the truth." That is not what she is here to do. She is here to educate you on how victims of trauma, adolescent victims, react. Anything is possible, *but is it probable is your question?* And the fact that something is possible and possible means that it is half of one percent likelihood doesn't create reasonable doubt.

(emphasis added).

Appellant claims the government, by this argument, conveyed the message that "because so few children report sexual abuse, then SS and AK, must be telling the truth." To the extent that appellant argues that the first italicized sentence is illogical and therefore improper, we agree. Dr. Turner testified about child victim rates of reporting. She did not offer testimony about rates of false reports, nor did she testify that children honestly report child sex abuse. We see the trial counsel's

argument as being nonsense—in that it has no logical sense. We do not however see, as appellant argues, that "the government vouched for the witnesses." As the lack of coherence in the trial counsel's argument was as apparent to the panel as it is to us, appellant has not established his burden of demonstrating material prejudice to a substantial right.

Appellant also argues that the second italicized question was "misleading argument regarding probable cause." Appellant further argues that the argument "increased the defense burden." We understand appellant's argument to be that the trial counsel improperly assigned a burden to the defense and mischaracterized the definition of reasonable doubt. Any error was corrected by the military judge who correctly defined reasonable doubt and instructed the panel that "any inconsistency between what counsel have said about the instructions and the instructions which I give you, you must accept my statement as being correct." Accordingly, we find no prejudice and no plain error.

### 5. Arguing facts not in evidence

During the defense case appellant's wife was called as a witness. The defense laid a foundation for an opinion of AK's truthfulness. However, before giving the opinion, the government asked to voir dire the witness. The record contains the following:

> Q. [CDC] You feel like you have known [AK] long enough to assess her character for truthfulness?
>
> A. Yes.
>
> Q. [CDC] What is that assessment?
>
> ATC: Objection
>
> MJ: Basis.
>
> ATC: Lack of foundation. I request to *voir dire* the witness.
>
> . . . .
>
> Q [ATC]. Mrs. Koch, you remember that I called you on 15 February 2015?
>
> A. Yes.

Q. To talk about your testimony today?

A. Yes.

. . . .

Q. And you remember during that conversation I asked you, you know, "In terms of the honesty of your daughter, do you think that she is generally an honest person?"

A. Mm-hmm.

Q. And you said, "Yes."

A. At the time, yes.

During a subsequent Article 39(a) session, outside the presence of the panel members, Mrs. Koch was asked by the military judge whether her opinion of her daughter was "[t]ruthful or untruthful, would you testify that she is untruthful?" Mrs. Koch answered "In this particular case, I believe that she is being untruthful. Generally not."

The military judge then clarified the nature of Mrs. Koch's expected character testimony. We find that looking at the testimony as a whole, Mrs. Koch's offered opinion of her daughter's character for truthfulness was based on her assessment that her daughter's allegations against appellant were false. In short, Mrs. Koch was of the opinion that her daughter was generally truthful but was not being truthful in regard to the pending charges.

The military judge then sustained a government objection to Mrs. Koch providing an opinion as to her daughter's truthfulness.[12]

In rebuttal argument the government argued that Mrs. Koch had testified that AK is a "[g]enerally honest person."

Appellant correctly argues on appeal that the trial counsel's argument mischaracterized what had happened. Mrs. Koch never gave an opinion as to AK's character for truthfulness. Rather, the military judge sustained the government's objection before she could answer the defense counsel's question. Instead what had happened was that the government–while voir diring the witness–elicited an out of

---

[12] In an assignment of error we do not directly address, appellant alleges that the exclusion of Mrs. Koch's testimony was prejudicial error. We disagree. Given that, at least initially, her "opinion" testimony was essentially an opinion on whether she believed her daughter's allegations (i.e. lie detector testimony) the military judge was well within her discretion to exclude the testimony.

court statement by Ms. Koch that she had *previously* assessed her daughter as generally being honest.

On appeal, appellant argues that Ms. Koch's answer to the trial counsel's voir dire questions were not substantive evidence. Accordingly, appellant argues, the trial counsel erred when he argued that the testimony had come in substantively.

We see the issue differently. Appellant did not object or request a limiting instruction for the testimony elicited by the trial counsel. Accordingly, we see the issue as whether the military judge plainly erred by not sua sponte issuing a limiting instruction. Without an objection or limiting instruction the panel was not instructed on how they could consider the testimony.

When "evidence that is admissible against a party or for a purpose–but not against another party or for another purpose–the military judge, *on timely request*, must restrict the evidence to its proper scope and instruct the members accordingly." Mil. R. Evid. 105 (emphasis added). As our sister court said in *United States v. Borland,* "[t]he trial defense counsel did not ask the military judge to restrict the evidence to its proper scope and to instruct the members accordingly. Since no limiting instruction was requested, none was required." 12 M.J. 855, 857 (A.F.C.M.R. 1981) (citing Mil. R. Evid. 105; *United States v. Washington,* 592 F.2d 680 (2d Cir. 1979)); *see also United States v. Lewis*, 693 F.2d 189, 197 (D.C. Cir. 1982) (no obligation on part of trial judge to give limiting instruction as to uncharged acts used to prove a scheme where no request was made). Nonetheless, "as a general matter instructions on limited use are provided upon request under M.R.E. 105, the rule does not preclude a military judge from offering such instructions on his or her own motion, [] and failure to do so in an appropriate case will constitute plain error." *United States v. Kasper*, 58 M.J. 314, 320, 21 (C.A.A.F. 2003) (citations omitted).

However, in the context of the entire case we do not find any clear or obvious error. *United States v. Gomez*, 76 M.J. 76, 81 (C.A.A.F. 2017). This is not the case where "in the context of the entire trial . . . the military judge should be 'faulted for taking no action' even without an objection." *United States v. Burton*, 67 M.J. 150, 153 (C.A.A.F. 2009) (quoting *United States v. Maynard*, 66 M.J. 242, 245 (C.A.A.F. 2008)). As the drafter's analysis to Mil. R. Evid. 105 clarifies, when adopted the rule "overrule[d]" prior cases which had placed the burden on the military judge and it is "compatible with the general intent of both the Federal and Military Rules in that they place primary if not full responsibility upon counsel for objecting to or limiting evidence." Mil. R. Evid. 105 analysis at A22-4. "Indeed, we have explained that there are occasions when, for tactical reasons, defense counsel may wish to forego such a limiting instruction because it might focus the jury's attention on the damaging evidence." *United States v. Rhodes*, 314 U.S. App. D.C. 117, 62 F.3d 1449, 1453 (1995) (*vacated on other grounds*, 517 U.S. 1164 (1996)).

We do not find the military judge plainly erred by either: 1) failing to sua sponte issue a limiting instruction; or 2) failing to sua sponte correct the trial counsel's argument.

## D. Sentence Appropriateness

### 1. The Sentence

In a personal submission made pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant asks us to review the appropriateness of his sentence. All three judges on this panel find appellant's submission to have merit, albeit to different degrees. Our analysis here is initially separate from our reassessment of the sentence after setting aside one finding for a *Hills* error.

Appellant was convicted of three violations of a general order for providing alcohol to minors as well as two specifications of abusive sexual contact for touching his stepdaughter's buttocks. For this conduct, appellant was sentenced to be dishonorably discharged from the Army, eight years confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1.

Appellant describes his sentence as "too severe in contrast to [the] offense[s]." Appellant specifically asks that we "grant [him] clemency in the form of Time Served (7 years to be taken off my 8 year sentence)."

We are not authorized to grant clemency. *United States v. Nerad*, 69 M.J. 138, 148 (C.A.A.F. 2010) "Clemency is a highly discretionary command function of a convening authority." *United States v. Travis*, 66 M.J. 301, 303 (C.A.A.F. 2008) (citations omitted).

However, we must nonetheless determine whether the sentence is "appropriate." In doing so we "bring to bear [our] wisdom, experience, and expertise" in "consideration of sentence appropriateness." *United States v. Hutchison*, 57 M.J. 231, 234 (C.A.A.F. 2002). "The breadth of the power granted to the Courts of Criminal Appeals to review a case for sentence appropriateness is one of the unique and longstanding features of the Uniform Code of Military Justice." *Id.* at 233. Our review includes, but is not limited to "consideration of uniformity and evenhandedness of sentencing decisions." *Id.* at 234 (quoting *United States v. Sothen*, 54 M.J. 294, 296-97 (C.A.A.F. 2001).

The offenses of which appellant stands convicted, especially when one considers the totality of the circumstances in which they were committed, are not minor offenses. They are serious offenses which warrant serious punishment.

Nonetheless, we may not approve a sentence that is grossly disproportionate to appellant's crimes, substantially more than is retributively necessary, exceeds the requirements of general and specific deterrence, and ultimately may undermine confidence in military justice if appellant is seen as being punished more than his "just deserts." Although each of us disagrees as to the appropriate amount, we find in this case that the sentence as approved by the convening authority is too severe and, accordingly, we provide appellant relief in the decretal paragraph.

### 2. R.C.M. 1006(d)(1)

Rule for Court-Martial 1006(d)(1) reads as follows: "*Duty of members.* Each member has the duty to vote for a proper sentence for the offenses of which the court-martial found the accused guilty, *regardless of the member's vote or opinion as to the guilt of the accused.*" (emphasis added). The sentencing instructions given by the military judge in this case did not include the second clause of the rule (the italicized language above) that the sentence must be determined "regardless of the member's vote or opinion as to the guilt of the accused." The instructions did, however, follow the standard instructions in the Military Judges' Benchbook. *See* Dep't of Army Pam. 27-9, Legal Services: Military Judges' Benchbook [Benchbook], para. 8-30-20 (10 Sept. 14) ("It is the duty of each member to vote for a proper sentence for the offense(s) of which the accused has been found guilty.").

While we have researched the issue, we have not found any case or analysis which explains why the standard Benchbook instructions omit instructing the members on their duties in full accordance with the rule.

However, we cannot attribute appellant's sentence in this case to the failure to fully instruct the panel on the duties prescribed by R.C.M. 1006(d)(1). It is nigh impossible to know how or why a panel sentenced an accused to a particular sentence. We do not find prejudicial error, let alone (as there was no objection) plain error, in the instructions given in this case.

Appellant's relatively high sentence to confinement could be attributable to his mendacious testimony, his record of nonjudicial punishment for using cocaine, and the other evidence in the record. Or, appellant's sentence could simply reflect that court-martial sentences are left to the discretion of the court-martial and that in any system with such discretion, it will be exercised within a range of permissible outcomes. In any event, our sentence appropriateness review under Article 66(c) serves as a check on unnecessarily severe sentences.

Rule for Court-Martial 1006(d)(1) properly tells a panel member that they must vote for the appropriate sentence without regard to how they voted or viewed the evidence during the findings portion of the trial. In other words, it is the "duty"

15

of the member to set aside their *personal* belief on the accused's guilt during sentencing and instead vote on a sentence based on *the court-martial's* findings.

We can discern no reason not to fully instruct the panel in accordance with its duties as prescribed by R.C.M. 1006(d)(1). Indeed, because the UCMJ does not require unanimous verdicts, such an instruction may be more necessary in the military justice system than in comparable civilian courts.

Non-unanimous verdicts require that panel members, on occasion, are required to vote for a sentence based on court-martial findings with which they do not agree. The instruction that the sentence must be determined "regardless of the member's vote or opinion as to the guilt of the accused," in combination with the other instructions, further reduces the danger that a panel member will improperly bring his or her opinion from findings into their sentence deliberation.

Take, for example, an eight member panel where five panel members vote to find an accused guilty of a serious offense. As it takes the agreement of six members to convict the accused, the accused will be acquitted of the serious offense. If such a case proceeds to sentencing because of other less serious offenses it will again require six of the eight members to agree on the sentence. In this hypothetical, *at least* three panel members who believed the accused was guilty of the serious offenses must nonetheless agree on the punishment for the less serious offense.

The possible danger is that, absent instructing the panel in accordance with R.C.M. 1006(d)(1), a panel member who believed the accused guilty of more serious offenses will import that belief into his or her determination of the appropriate sentence. While the standard instruction, Benchbook, para. 8-3-20, tells the members they have a duty to determine proper sentence only for the offenses of which the court-martial found the accused guilty, they are not specifically told that the "proper sentence" is made without reference to their vote or opinion during findings.

**CONCLUSION**

Additional Charge II and its specification are SET ASIDE and DISMISSED. The remaining findings are AFFIRMED.

A majority of the court finds that a dishonorable discharge, five years and six months confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1 should be approved for appellant's offenses.

However, given that we set aside Additional Charge II and its specification, we must also reassess the sentence. Reassessing the sentence on the basis of the

16

error noted, the entire record, and in accordance with the principles of *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we AFFIRM only so much of the sentence as provides for a dishonorable discharge, five years confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

WOLFE, Judge, concurring.

All three judges on the panel arrive at different conclusions as to the appropriate sentence in this case. In my assessment after reviewing the entire record I would initially approve a dishonorable discharge, confinement for two years and six months, total forfeiture of all pay and allowances, and reduction to the grade of E-1. In my view this sentence adequately punishes appellant for the offenses of which he was ultimately convicted. However, I also agree with Judge Febbo that–in any event –we should not approve a sentence of more than five years of confinement. Accordingly I concur with the sentence.

I would also revisit our holding in *Kelly* that the failure to object to errors in argument waives, rather than forfeits, the error.[13]

MULLIGAN, Senior Judge, dissenting, in part.

I agree with all parts of the opinion except for our assessment of the sentence. I would initially approve only so much of the sentence as extends to a dishonorable discharge, confinement for six years, total forfeiture of all pay and allowances, and reduction to the grade of E-1. In light of the dismissed specification, I would only affirm a dishonorable discharge, confinement for five years and six months, total forfeiture of all pay and allowances, and reduction to the grade of E-1.

For the reasons stated by Judge Febbo I would likewise not revisit our decision in *United States v*. Kelly, 76 M.J. 793 (Army Ct. Crim. App. 2017).

FEBBO, Judge, concurring.

*A. Sentence Appropriateness*

In giving individualized consideration to this particular appellant, the nature and seriousness of the offenses, appellant's record of service, the record of trial, and

---

[13] I was the author of this Court's opinion in *Kelly*. Nonetheless, I am persuaded by our sister court's treatment of the issue in *Motsenbocker* that we (or at least I) overstepped. While I recognize that the issue is now squarely before the CAAF, I would not wait to revisit the issue.

other matters presented by appellant in extenuation and mitigation (to include R.C.M. 1105 and 1106 matters), I would initially approve only so much of the sentence as extends to a dishonorable discharge, confinement for five years and six months, total forfeiture of all pay and allowances, and reduction to the grade of E-1. I am mindful that the panel had the benefit of seeing and hearing the evidence and demeanor of the government and defenses witnesses which may explain the panel's sentence to confinement.

Trial court judges and panel members are responsible for determining a proper sentence. Article 66(c), UCMJ, requires us to take into account that the trial court saw and heard the evidence. In conducting our sentence appropriateness review, we review the factors presented and considered by the panel in sentencing "to include: the sentence severity; the entire record of trial; appellant's character and military service; and the nature, seriousness, facts, and circumstances of the criminal course of conduct." *United States v. Martinez*, 76 M.J. 837, 841-42 (Army Ct. Crim. App. 5 Sep. 2017). The panel was presented evidence in extenuation and mitigation, to include appellant's combat duty from his deployment to Iraq and his receiving a Combat Action Badge (CAB). The panel was also presented with evidence in aggravation, evidence of appellant's lack of rehabilitative potential, and negative personnel records of the appellant.

The Article 92 offenses for violating a general order by providing alcohol to minors, the Article 120 abusive sexual contact, and the Article 120b lewd act with a minor were serious offenses and undermined appellant's status as a former noncommissioned officer (NCO). The panel was instructed that the maximum punishment for which appellant was found guilty included a dishonorable discharge, forty-one years confinement, total forfeitures and reduction to E-1. The panel sentenced appellant to less than 20% of the total maximum confinement.

During sentencing, in considering appellant's rehabilitative potential, the panel was given a mendacity instruction if they concluded appellant willfully and materially lied under oath to the court about the violation of the general order and abusive sexual contact offenses. In considering appellant's character and military service, the panel was presented evidence about appellant's disciplinary history. Appellant received nonjudicial punishment under Article 15, UCMJ, and reduced from Sergeant to Specialist for use of cocaine while he was pending these court-martial charges. At the time appellant provided alcohol to minors and used cocaine, he was a trained Unit Prevention Leader (UPL) entrusted with keeping his unit free of drugs and alcohol abuse. When appellant provided alcohol to minors, he was an NCO, in his late 20s, entrusted to follow lawful regulations and entrusted with the safety and welfare of children while they were at his house. Instead, in order to socialize and party with seventh-grade teenage girls, appellant provided thirteen-year-old minors alcohol at his on-post quarters and outside in the woods, to the point where they became intoxicated. In providing the alcohol, appellant knew his actions were wrong and informed one of

the minors, "what happens in Vegas, stays in Vegas, and what happens in this house stays in this house." In addition, appellant slapped, touched, and grabbed his thirteen-year-old stepdaughter's buttocks in a sexual manner. Appellant's lewd acts had an adverse impact on her, made her feel like just an object, caused her to feel like less of a person, and undermined her trust in people.

Consistent with following and applying the plain language of the rules, I likewise see no harm in instructing panels with the full provisions of R.C.M. 1006. Even if not part of the Benchbook instructions, if an accused thought it was beneficial for sentencing, his defense counsel could request the military judge to instruct the panel with this additional language. Since instructions are not read in isolation, I do not find any error or prejudice in appellant's sentencing instructions.

The panel instructions before findings and court-martial procedure reinforce the presumption of innocence and the distinction between sentencing the guilty from the innocent. The evidence presented at sentencing, the arguments made by counsel, and instructions are limited to sentencing an accused for only findings of guilty. The military judge instructed the panel members to sentence appellant only for the offenses for which he was found guilty. R.C.M. 1006(d)(1) also clearly states that the members have a "duty to vote for a proper sentence for the offenses of which the court-martial *found the accused guilty*." (emphasis added).

Although I concur with the opinion's treatment of R.C.M. 1006, I read the second clause of R.C.M. 1006(d)(1) as directed more at members who voted for findings of not guilty and explaining their duty to vote for a proper sentence even if they personally do not believe appellant committed the offense. For those members, they cannot abstain and must vote "regardless of the member's vote or opinion as to the guilt of the accused." *Id*.

### B. Sentence Reassessment

In light of the dismissed specification, there has been a change in the penalty landscape from a maximum of 41 years confinement to 26 years confinement. However, the nature of the remaining offenses captures the gravamen of appellant's criminal conduct to include the aggravating circumstances. In considering the totality of the circumstances of the remaining offenses, and applying *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305, 307 (C.A.A.F. 1986), I would affirm a dishonorable discharge, confinement for five years, total forfeiture of all pay and allowances, and reduction to the grade of E-1.

### C. United States v. Kelly

Additionally, I see no reason to revisit *United States v. Kelly,* 76 M.J. 793 (Army Ct. Crim. App. 2017), as Judge Wolfe suggests. I would apply the plain language of R.C.M. 919(c). As CAAF stated in *United States v. Reese*, courts "apply the ordinary rules of statutory construction in interpreting the R.C.M." 76 M.J. 297, 301 (C.A.A.F. 2017) (analyzing the plain language of R.C.M. 603(d)). R.C.M. 919(c) clearly states that an appellant who fails to object to an improper argument thereby waives objection.[14] The rule does not discuss forfeiture. R.C.M. 919(c) encourages resolution of potential errors at trial. Just as important, when arguing before a panel, if an objection that an argument is improper is sustained, the military judge can "immediately instruct the members that the argument was improper and that they must disregard it." *See*, R.C.M. 919(c) discussion. In extraordinary cases, the military judge can declare a mistrial. Without objections the parties do not have an opportunity to argue their positions before the military judge, the military judge is precluded from deciding the issue, and the trial court is deprived of establishing a full record of the issue for appeal. As we did in appellant's appeal, as part of our Article 66(c), UCMJ, review the parties can still argue whether the court should leave the appellant's waiver intact, or correct an error alleged for the first time on appeal. *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016). However, in applying and following the R.C.M., the issue is more properly framed and does not ignore the plain language of the rules. The CAAF will clearly decide this issue when they consider *United States v. Kelly*, No. 17-0559/AR (C.A.A.F. 20 Dec 2017) (order).

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[14] The use of the term "waiver" was intentional and the R.C.M. is consistent with applying waiver for failure to objections made during arguments in both findings and sentencing. *See* R.C.M. 919(c) and 1001(g)